# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.

                                  4:99cr017-RH
                                  4:01cv301-RH

ALEX RANDELL,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Defendant Randell filed a 28 U.S.C. § 2255 motion to vacate.  Doc. 53.  The allegations of fact are set forth in the attached memorandum (hereafter § 2255 memo).  The Government filed an opposition to the motion, including a copy of the Government's answer brief in the direct appeal.  Doc. 58.  Defendant filed a traverse.  Doc. 62.  Defendant's motions to amend and for default were denied.  Docs. 57 and 61.

**Procedural History**

The indictment charged in count one that on or about February 16, 1999, Defendant knowingly possessed with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a) and (b)(1)(a)(iii).  Doc. 10.  Count two charged a conspiracy from January 1, 1998 to February 16, 1999, between Defendants and other

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE. FLA.

2002 JUL -2  PM 4: 03

FILED

persons, to distribute cocaine base in violation of 21 U.S.C. § § 841(a)(1), (b)(1)(a)(iii), and 846. *Id.* The Government filed a notice of intent to seek enhanced penalties based on prior convictions as provided under 21 U.S.C. § § 841, 846, and 851. Doc. 16.

The jury found Defendant guilty of both counts. Doc. 23. Defendant was sentenced to two terms of life imprisonment, to be served concurrently. Doc. 32. Defendant appealed, and the judgment was affirmed. Doc. 51. The court of appeals rejected Defendant's arguments that this court erred in denying his request for substitute counsel, and in finding that the Government met its burden of proving prior convictions under 21 U.S.C. § 851(c)(1). *Id.*

**Ground One**

Defendant asserts that the Government failed to prove the essential elements of conspiracy under 21 U.S.C. § 846. § 2255 memo, pp. 1-4. He argues that the evidence showed only a buyer-seller transaction, and a conspiracy with Maurice Nealy, a government informant. Defendant asserts that without evidence of a conspiracy he is actually innocent of the offense charged.

This ground, like grounds two, three and four, is procedurally defaulted because not raised on appeal, so Defendant must show cause and prejudice for the default or actual innocence (*i.e.,* that a constitutional violation has probably resulted in the conviction of an innocent person). Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). He cannot do so as the claims are without merit, as discussed in this recommendation. The merits of all the claims will be addressed, despite the default, as Defendant also asserts ineffectiveness of counsel as

cause for his default (ground five).  *See* <u>United States v. Nyhuis</u>, 211 F.3d 1340 , 1344

(11th Cir. 2000) (ineffectiveness of counsel can constitute cause for a default, but to

establish ineffectiveness the arguments Defendant faults counsel for failing to raise

must have been "significant enough to have affected the outcome of his appeal.")

(citation omitted).  Defendant also asserts in his traverse that appellate counsel was

ineffective for failing to challenge the sufficiency of evidence on appeal.  Doc. 62, pp. 7-

8.

     With regard to ground one, Officers Drzewiecki and Balser testified regarding

Defendant's arrest on February 9, 1998,[1] when Defendant was found in possession of

crack cocaine packaged in such a way (eleven separate packages in one plastic bag)

as would be used for distribution.  Doc. 28, pp. 13-19, 21-27.  Defendant told Balser

that he was new to town and had been selling crack with a guy named Keith.  *Id.*, pp.

23-24.  The parties stipulated that seven grams of crack were seized in that arrest.  *Id.*,

p. 18.

     Leon County Sheriffs Officers Cook, Chase, Allen, Vaugn, Fuller, and Chaires all

testified regarding Defendant's arrest at the residence of Renard Maurice Nealy, a.k.a.

"Big Rick."  *Id.*, pp. 36-93, 122-146.  A search warrant was executed at Nealy's house

late on February 16, 1999, and cocaine was found.  Nealy agreed to cooperate by

ordering more drugs from the person from whom he had gotten the cocaine.  This

ultimately resulted in delivery of cocaine by Defendant in the early hours of February

17, 1999, followed by his arrest.

---

[1] Defendant had been pulled over that night for driving with a broken headlight, and the search was prompted by the odor of marijuana.  Doc. 28, pp. 13-15.

Nealy testified that a few days before the search he had gotten 26 or 27 grams of crack cocaine from "Ace," whom he identified as Defendant. *Id.*, p. 96. Nealy said he met Defendant through Dale Folsom, who was an addict who did errands for drug dealers in exchange for drugs. *Id.*, p. 97. Nealy first called Defendant to buy crack cocaine the preceding September or October, and bought a half ounce. *Id.*, pp. 97-98. He said that the crack cocaine he got from Defendant the night of the arrest (three ounces) was the most he had ever received from him. The most before that night was two ounces. *Id.*, pp. 98-99. He said he got crack from Defendant more than ten times, but not more than twenty times, mostly in ounces. *Id.*, p. 99. Nealy said that he owed Defendant $850 for the last ounce of crack which Defendant had delivered, he had paid $600, and Defendant had "fronted" him $250. *Id.*, p. 103. Nealy said that two or three times, Defendant sent "Dred," someone who hung out with Defendant, to deliver drugs to him. *Id.*, pp. 101-102. Nealy said that the night of the arrest he paged Defendant, and talked to him at least three times on the phone, and Defendant was "dragging it out. I assumed that he was probably cooking it." *Id.*, p. 105. He said it had happened before, that he had tried to get crack and there was a delay, either because Defendant did not have it or was cooking it. *Id.*, p. 104.

This evidence established more than just a "buy-sell" relationship between Nealy and Defendant. *Compare* United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999) (finding the evidence of a "buy-sell" transaction there was insufficient to support inference of conspiracy, comparing with cases in which the inference was supported based on a continuing relationship between buyer and seller). Nealy met Defendant through a drug user, and got Defendant's phone number so he could get drugs from

him.  During the four or five month period between his first purchase of a half ounce and his attempt to purchase three ounces resulting in Defendant's arrest, Nealy had purchased crack from Defendant between ten and twenty times, usually in ounce quantities, but up to two ounces at a time, and a few times Defendant sent another person to deliver it to Nealy.  The evidence proved an agreement between Defendant and one or more persons, the object of which was to commit an unlawful act.  165 F.3d at 1333 (setting forth the two elements for a conspiracy, noting that it may be established through circumstantial evidence, citation omitted).  Defendant's claim of actual innocence of a crack cocaine conspiracy is without merit.

**Ground Two**

Defendant asserts that the Government's set up of the transaction between informant Nealy and Defendant amounted to entrapment.  § 2255 memo, pp. 4-7.  He argues that law enforcement promoted rather than detected crime, and he was not predisposed to commit the offense. [2]

"In laying an evidentiary foundation for entrapment, the defendant bears the initial burden of production as to government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime."  United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002) (citation omitted).  Mere suggestion or initiation by the

---

[2] Defendant argues in his traverse, that because the contraband and marked money were actually in Nealy's possession when the officers came in, the Government had to prove Defendant's predisposition.  Doc. 62, pp. 10-11.  The point of this argument is not apparent.  Clearly the drugs had not been produced by Nealy, who was been fully searched and monitored by law enforcement until Defendant's arrest.

Government is insufficient to show inducement; there must be an element of persuasion or mild coercion. *Id.*, p. 1344 (citations omitted).

Even if Defendant could have made a showing of Government inducement, which is unlikely on the evidence summarized above, the Government could have shown predisposition. Defendant had sold crack cocaine to Nealy on numerous prior occasions, had previously been arrested with crack cocaine packaged for sale, and admitted at that time that he was selling cocaine and had prior cocaine convictions. PSR, ¶ ¶ 44, 45, 47, 49. This claim is without merit.

**Ground Three**

Defendant asserts that the enhancement of his sentence based on prior convictions was erroneous because the Government did not provide "real notice" of its intention to seek an enhanced sentence under 21 U.S.C. § 851(a), and he did not know he faced a life sentence until sentencing. § 2255 memo, pp. 7-10. He asserts that his challenge is to the sufficiency of the notice filed on April 1, 1999, and he "reserves the right to redress the validity of any prior conviction in [a] future proceeding." *Id.*, p. 8.

Defendant was advised by the undersigned that he faced mandatory life sentences at his first appearance on the complaint and again at his first appearance on the indictment. Docs. 8 and 13. The order of detention pending trial noted that Defendant faced a mandatory life sentence. Doc. 9, p. 2. The Government filed an information and notice of intent on April 1, 1999, specifically listing Defendant's prior felony drug offenses and stating the belief that the enhancement would result in a mandatory minimum term of life. Doc. 16.

After trial, the Government brought up the enhancement and Defendant was advised that the prior convictions would affect sentencing, and any objections would have to be timely filed.  Doc. 43, p. 62.  Defendant and counsel were both advised that any objections to the earlier convictions must be included in the objections to the PSR, and if not made it would be assumed that the convictions existed.  *Id.*

The sentencing transcript speaks for itself.  Doc. 45.  Defendant was uncooperative with counsel.  The court advised him of the sentencing procedure and gave him the opportunity to talk further with counsel, though he refused.  *Id.*, pp. 10-16. The court then asked Defendant himself about each of the prior drug convictions, and noted that Defendant acknowledged one, denied one, and had "basically chosen to stand mute" on the other three convictions.  *Id.*, p. 19.  The court granted the motion to strike Defendant's objections as untimely and unspecific, but also considered the objections.  *Id.*, p. 44.  The Government produced evidence of the prior convictions, *Id.*, pp. 23-40, and the court of appeals found that the Government met its burden of proving them beyond a reasonable doubt.  Doc. 51, pp. 3-4.  No error in the notice or application of the enhancement is shown.

**Ground Four**

Defendant asserts violations of due process and equal protection based on insufficient evidence to support a finding of guilt for a crack cocaine, rather than powder cocaine, offense.  § 2255 memo, pp. 10-13.

This claim is baseless.  The testimony all pertained to crack or cocaine base, not powder cocaine, and the Government introduced the crack cocaine which was seized. Doc. 20 (exhibit list).  There is no evidence that the substance was other than crack.

**Ground Five**

Defendant asserts that his indictment, which did not specify drug amount, was fatally flawed under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435 (2000).  § 2255 memo pp. 13-16.  He also asserts that drug quantity was not proven beyond a reasonable doubt.

The Eleventh Circuit has held that Apprendi claims raised in an initial § 2255 motion are not jurisdictional and are barred from retroactive application on collateral review.  Hamm v. United States, 269 F.3d 1247, 1249 (11th Cir.2001); following McCoy v. United States, 266 F.3d 1245, 1247-58 (11th Cir. 2001), cert. denied, 122 S.Ct. 2362 (2002),[3] applying Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (other citations omitted).  The court in McCoy affirmed on the additional alternative ground that the claim was procedurally defaulted because not raised on direct appeal.  266 F.3d at 1258.  While the Supreme Court has not yet addressed retroactivity, it has held (in the context of direct review) that Apprendi error in a drug indictment is not a jurisdictional defect, and therefore subject to appellate review for plain error where no objection is raised at trial.  United States v. Cotton, 535 U.S. __, 122 S.Ct. 1781, 1784-85, __ L.Ed.2d __ (May 20, 2002).

Apprendi was decided on June 26, 2000.  Defendant was sentenced in 1999, the opinion on his appeal was issued June 28, 2000, and the mandate issued on August 1, 2000.  Doc. 51.  He did not raise an Apprendi type claim at trial, sentencing, or on

---

[3] The claim in Hamm differed from the claim in McCoy because Mr. Hamm's claim might be meritorious if Apprendi applied, but noted that Teague bars all Apprendi claims, "whether or not they are meritorious."  269 F.3d at 1249-50 (footnote omitted).

appeal.  While his conviction was not yet final when Apprendi was decided, he would not have been permitted to raise it at that time as it had been abandoned because not raised in the initial brief.  *See* United States v. Ardley, 242 F.3d 989 (11th Cir.) (holding, in a case remanded by the Supreme Court for reconsideration in light of Apprendi, that defendant abandoned the issue because he failed to raise it in his initial brief, which was filed before Apprendi was decided), *cert. denied*, 533 U.S. 962 (2001); *suggestion for rehearing en banc denied* (with concurring and dissenting opinions), 273 F.3d 991, *cert. denied*, __ U.S. __, 122 S.Ct. 1457 (2002).

**Ground Six**

Defendant asserts ineffective assistance of counsel based on counsel's failure to raise the issues raised above as grounds one through five.  § 2255 memo, pp. 16-19. Defendant must demonstrate both attorney error and prejudice to the outcome to establish ineffective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Claims one, two and three are clearly without merit as determined above, and Defendant cannot show error or prejudice for counsel's failure to raise them.  As to ground four, Defendant has not shown ineffectiveness because he has not demonstrated that the substance was not, in fact, crack cocaine. *See* Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997) (finding no prejudice for counsel's failure to challenge methamphetamine type at sentencing purposes where defendant did not show that he was sentenced for the wrong type).

Finally, Defendant's claim that counsel was ineffective for failing to raise the Apprendi issue (ground five), is without merit.  Prior to Apprendi, at the time Defendant was tried, sentenced, and filed his brief on appeal, this circuit had "consistently rejected

this claim, construing § 841(a) as setting forth a single, complete offense and § 841(b) as setting forth sentencing factors relevant only to determining a defendant's sentence for having violated § 841(a)." 269 F.3d at 1266 and n. 30 (collecting cases). Defendant cannot show that counsel's failure to raise this claim, which would have seemed futile under circuit precedent still binding at the time, was professionally unreasonable. Valenzuela v. United States, 261 F.3d 694, 700 (7th Cir. 2001) (rejecting claim that counsel could be ineffective for failing to forecast Apprendi, citing cases); *cf.* McCoy, 266 F.3d at 1258 ("The fact that every circuit which had addressed the issue had rejected the proposition that became the *Apprendi* rule simply demonstrates that reasonable defendants and lawyers could well have concluded it would be futile to raise the issue," though legal novelty did not constitute cause for the procedural default); *see also*, United States v. Ardley, 273 F.3d 991, 992-94 (11th Cir. 2001) (J. Carnes, concurring in the denial of rehearing en banc) (enforcement of procedural bars in the Apprendi context will not waste judicial resources: "[b]ecause our circuit law completely forecloses the contention that an attorney's failure to anticipate the *Apprendi* decision is ineffective assistance," hearings on such claims need not be held, "[t]he issue is settled as a matter of law.") (collecting cases).

**Recommendation**

It is, therefore, respectfully **RECOMMENDED** that the § 2255 motion filed by

Defendant Alex Randell (doc. 53) be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, this _2nd_ day of July, 2002.


**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**